UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MORTIMER EXCELL,

                               Plaintiff,

                                                9:07-CV-0305
v.                                              (GTS/GHL)

ROBERT K. WOODS, et al.,

                               Defendants.
_____

APPEARANCES:                               OF COUNSEL:

MORTIMER EXCELL, 96-R-8355
Plaintiff *pro se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO              ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Currently

pending before the Court is a motion by some of the Defendants to dismiss for failure to state a

claim pursuant to Federal Rules of Civil Procedure 12(b)(6).  (Dkt. No. 67.)  For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

I.       BACKGROUND

A.       Plaintiff's complaint in Case No. 9:05-CV-1231 (GTS/GJD)

On September 28, 2005, Plaintiff Mortimer Excell filed a previous action in this Court.

*Excell v. Burge*, No. 9:05-CV-1231 (GTS/GJD)("*Burge*").  The operative complaint in that case

alleges that on five separate occasions, correctional officers at Auburn Correctional Facility

harassed Plaintiff based on his race and religion.  (*Burge* Dkt. No. 7.)

Specifically, the *Burge* complaint alleges that on June 17, 2005, officers G. Simons and

Labetz taunted Plaintiff with religious and racial epithets, threw his religious headgear ("Tsalot-

Kob") on the ground, and threatened to harm Plaintiff if he filed any grievances.  (*Burge* Dkt.

No. 7 at ¶¶ 1-8.)  The officers then issued a misbehavior report charging Plaintiff with violating

various disciplinary rules.  *Id.* at ¶ 9.  After a disciplinary hearing, Plaintiff was found guilty of

the charges.  *Id.*  at ¶ 10.  Plaintiff filed an administrative appeal with John W. Burge, the

superintendent of the facility, which was denied.  Plaintiff's written complaint to DOCS

commissioner Glenn Goord was 'neglected.'  *Id.* at ¶ 11.

On July 20, 2005, officer Hess removed Plaintiff from a religious studies class and

informed him that he was not allowed to wear a colored Tsalot-Kob.  When Plaintiff protested

that DOCS directives allowed him to wear a colored Tsalot-Kobb, Hess summoned several

officers, who returned Plaintiff to his cell and placed him on keeplock status.  (*Burge* Dkt. No. 7

at ¶ 12.)  Plaintiff subsequently received a misbehavior report charging him with "out of place."

*Id.*  at ¶ 13.  Plaintiff was found not guilty after a disciplinary hearing, but did not receive a copy

of the written disposition.  *Id.* at ¶ 14.

On July 26, 2005, officer Simons approached Plaintiff in the mess hall, began calling him

2

racially derogatory names, and ordered him to remove his Tsalot-Kob.  (*Burge* Dkt. No. 7 at ¶ 15.)  Simons and two other officers then removed Plaintiff from the mess hall, confiscated his Tsalot-Kob, and returned him to his cell on keeplock status.  *Id*. at ¶ 16.  Subsequently, Plaintiff received a misbehavior report charging him with violating various disciplinary rules.  *Id.* at ¶ 17. After a disciplinary hearing, Plaintiff was found not guilty.  *Id.* at ¶ 18.

On August 4, 2005, officer Devito removed Plaintiff from his religious class and demanded to know why he was wearing a colored Tsalot-Kob. (*Burge* Dkt. No. 7 at ¶ 20.) Devito threatened to kill Plaintiff if he filed any complaints against him.  *Id*.  He then went into the class and stated that the organization would not be allowed to continue to operate if Plaintiff remained in the organization.  *Id*.  Devito returned Plaintiff to his cell and placed him on keeplock status.  *Id.* at ¶ 21.  Devito subsequently issued Plaintiff a misbehavior report charging Plaintiff with refusing a direct order.  *Id*.  at ¶ 22.  Plaintiff was found not guilty after a disciplinary hearing.  *Id*. at ¶ 23.  However, when he requested a written disposition, hearing officer Head told him to "get the fuck out [of] the hearing office[1]."  *Id*.

On August 9, 2005, officer Sourwine approached Plaintiff in the mess hall and ordered him to remove his colored Tsalot-Kob.  (*Burge* Dkt. No. 7 at ¶ 24.)  When Plaintiff showed Sourwine a copy of the DOCS directive allowing colored Tsalot-Kobs, Sourwine began calling Plaintiff racially derogatory names.  *Id*.  Officer Bray then approached Plaintiff, began calling Plaintiff racially derogatory names, said he did not "give a dam[n] fuck about ... the Directive," and ordered Plaintiff to leave the mess hall.  *Id*.  Bray returned Plaintiff to his cell and placed him

---

[1]     Because a motion to dismiss tests the face of a plaintiff's complaint, this Report-Recommendation includes many direct quotes from Plaintiff's complaint.  Any grammatical errors or idiosyncratic turns of phrase are Plaintiff's, not the Court's.

on keeplock status. *Id*. Subsequently, Plaintiff received a misbehavior report charging him with violating various disciplinary rules. *Id*. at ¶ 25. At the disciplinary hearing on the charges, hearing officer Head would not allow Plaintiff to present a defense and ordered that Plaintiff be removed from the hearing room. *Id*. at ¶ 26. Plaintiff was found guilty of the charges. *Id.*

In addition to these five incidents, Plaintiff alleged that he had filed a grievance against officer G. Steinberg for mail theft, sexual harassment, and threats. (*Burge* Dkt. No. 7 at ¶ 30.) However, Plaintiff did not name Steinberg as a defendant in the *Burge* action. Rather, he stated that he was simply 'notifying' the Court about the incident. *Id.* The Court did not interpret the *Burge* complaint as making any allegations against Steinberg. (*Burge* Dkt. No. 52 at 8.)

The *Burge* case has proceeded past the summary judgment stage. On summary judgment, the Court dismissed all claims against Head and the First Amendment religion claims against Hess, Devito, Bray, and Sourwine. Retaliation claims against those defendants remain pending.

### B. Plaintiff's complaint in this case

On March 23, 2007, Plaintiff filed the case pending before the undersigned. The operative complaint is the amended complaint filed on July 9, 2007. (Dkt. No. 17)("the complaint.") The first 27 paragraphs of the complaint's statement of facts repeat, nearly verbatim, the allegations of the *Burge* case. (Compare Dkt. No. 17 at ¶¶ 1-27 with *Burge* Dkt. No. 7 at ¶¶ 1-30.) In addition, the complaint includes allegations about the lack of response to Plaintiff's complaints and grievances, the denial of Plaintiff's parole, and ten other incidents of mistreatment by staff.

1.      *Allegations against Defendants Hess, Bellinger, Steinberg, Smith, Claflin, Wolczyk, Salvage, Goord and Burge re: urine sample, cell search and falsified transcript*

On August 22, 2005, Plaintiff was removed from his cell and escorted to the medical unit to give a urine sample. (Dkt. No. 17 at ¶ 28.) This sample was required because of a report by Defendant Hess, whom Plaintiff had not seen for two or three weeks. *Id.* As Plaintiff was being escorted, Defendant Joseph Bellinger[2] told the escort officers to be sure that Plaintiff's urine test was positive. *Id.* Plaintiff asserts that Hess' report and Bellinger's comment were made in retaliation for Plaintiff submitting a grievance and for "beating" the July 20, 2005, misbehavior report. *Id.*

While Plaintiff was giving the urine sample, Defendants Steinberg, B. Smith and Claflin searched his cell. (Dkt. No. 17 at ¶ 29.) When Plaintiff returned to his cell, his legal documents and belongings were on the floor and his three Tsalot-Kobs were in the toilet. *Id.* A cell search contraband receipt signed by Steinberg, B. Smith and Claflin stated that tobacco and marijuana had been found in the cell. *Id.*

On August 23, 2005, Plaintiff received a misbehavior report charging him with possession of a controlled substance. (Dkt. No. 17 at ¶ 30.) Plaintiff was found guilty after an August 25, 2005, disciplinary hearing conducted by Defendant Joseph Wolczyk at which Plaintiff was not allowed to present a defense. *Id.* He was sentenced to 12 months' SHU confinement, 12 months' loss of good time credits, and 12 months' loss of recreation, commissary, package and telephone privileges. *Id.*

---

[2]      The complaint refers to this defendant as "Joseph Bellnier." (Dkt. No. 17 at A-5.) I have used the spelling provided in Defendants' motion to dismiss.

On August 26, 2005, Plaintiff filed complaints with Defendants Goord and Burge.  He did not receive a response.  (Dkt. No. 17 at ¶ 32.)

Plaintiff appealed his disciplinary sentence through the prison appeals system and filed an Article 78 proceeding in state court.  (Dkt. No. 17 at ¶ 33.)  Plaintiff alleges that defendant stenographer Patricia Salvage "falsified the transcri[pt] of the Tier Three hearing ... in an effort to cover up staff misconduct."  *Id.*

I construe the complaint as asserting the following causes of action as a result of these events: (1) a retaliation claim against Defendants Hess and Bellinger; (2) a First Amendment religion claim, a Fourth Amendment claim, and substantive and procedural due process claims against Defendants Steinberg, B. Smith, and Claflin; (3) a procedural due process claim against Defendant Wolczyk[3]; and (4) a First Amendment access to the courts claim, a substantive due process claim, and a procedural due process claim against Defendant Salvage.

2.    *Allegations against Defendants Premo, Wood, and Corrigeux re: falsified drug test*

On April 29, 2006, Plaintiff was moved into a cell with an inmate who had a long history of drug use.  (Dkt. No. 17 at ¶ 38.)  On May 7, 2006, Defendant Premo ordered Plaintiff to submit a urine specimen.  Premo said "Albany" had requested the sample.  (Dkt. No. 17 at ¶ 36.)  On May 9, 2006, Plaintiff and his cell mate were both ordered to submit urine specimens.  (Dkt. No. 17 at ¶ 37.)  Plaintiff alleges that the reason for the second test was to use his cell mate's specimen "to give me a false positive."  (Dkt. No. 17 at ¶ 38.)

On May 12, 2006, Defendant Wood issued misbehavior reports charging Plaintiff and his

---

[3]    Defendant Wolczyk has answered the complaint.  (Dkt. No. 66.)

cell mate with use of controlled substances.  Plaintiff alleges that Defendant Wood drafted the report in a way that ensured that Plaintiff's cell mate would have his misbehavior report dismissed as a reward for helping to set up Plaintiff.  (Dkt. No. 17 at ¶ 39.)  Defendant N. Bezio conducted a disciplinary hearing on May 25, 2006.  (Dkt. No. 17 at ¶ 40.)  As part of his defense, Plaintiff requested a copy of the urinalysis test.  Plaintiff alleges that Defendants Premo and Corrigeux falsified the document to make it appear that Corrigeux, rather than "Albany," had requested the test.  *Id*.  Plaintiff was found guilty and sentenced to six months' SHU confinement, six months' lost good time, and six months' lost package, commissary, recreation, and telephone privileges.  *Id*.

I construe the complaint as asserting the following causes of action as a result of these events: (1) a Fourth Amendment claim, a conspiracy claim, and a due process claim against Defendant Premo; and (2) due process and conspiracy claims against Defendants Wood and Corrigeux.

3.  *Allegations against Defendants Lewis, Moore, Ramsdell and Woods re: drug test*

On June 17, 2006, Defendant B. Lewis ordered Plaintiff to submit a urine specimen. (Dkt. No. 17 at ¶ 41.)  Plaintiff, citing a three-hour time limit to submit specimens,  said he would submit the specimen when he finished eating.  *Id*.  Defendant Lewis said to another officer "Fuck him ... we will just put down [that] he [is] refusing to submit his urine specimen."  *Id*.  No one returned to take Plaintiff's specimen.  *Id*.  Plaintiff complained verbally to the building supervisor, Defendant Moore, and filed a written complaint with Defendant R. Woods.  *Id*.

On June 22, 2006, Defendant Lewis issued a misbehavior report charging Plaintiff with refusing a direct order.  (Dkt. No. 17 at ¶¶ 42, 45.)  On July 10, 2006, Defendant T. Ramsdell and

another officer escorted Plaintiff to a disciplinary hearing.  (Dkt. No. 17 at ¶ 45.)  When Plaintiff

protested, Defendant Ramsdell and another officer told Plaintiff that "if he do[es] not stop his jail

house lawyer shit and plead guilty they will issue[ ] the Plaintiff [another] false misbehavior

report."  *Id*.  When Plaintiff refused and began to present a defense, Defendant Ramsdell and the

other officer ordered the hearing officer to stop the hearing tape.  *Id*.  They threatened Plaintiff

with bodily harm, escorted him back to his cell, and ordered him to assume the frisk position.  *Id*.

While Plaintiff was positioned against the wall, the officers put all of his personal items on the

floor, including his Bible[4], and removed Plaintiff's pillow and toilet paper.  *Id*.  Plaintiff

immediately verbally complained to the housing supervisor.  (Dkt. No. 17 at ¶ 46.)

On July 11, 2006, Plaintiff filed a "complaint to Defendant Woods and a grievance

against Defendant Ramsdell" regarding the July 10 hearing room incident.  (Dkt. No. 17 at ¶ 48.)

Plaintiff alleged that Ramsdell acted in retaliation for a grievance Plaintiff filed against N. Bezio

on July 9, 2006.  *Id*.

On July 12, 2006, Plaintiff received a copy of a not guilty disposition from the July 10

hearing.  (Dkt. No. 17 at ¶ 47.)

I construe the complaint as asserting the following causes of action as a result of these

events: (1) a substantive due process claim, a procedural due process claim, and a conspiracy

claim against Defendant Lewis; and (2) an Eighth Amendment claim, a substantive due process

claim, and a procedural due process claim against Defendant Ramsdell[5].

_____

[4]      Plaintiff does not claim that Defendant Ramsdell violated his First Amendment
rights.  (Dkt. No. 17 at 56.)

[5]      Defendant Ramsdell has answered the complaint.  (Dkt. No. 66.)

4.     *Allegations against Defendants Moore and Travers re: glass in food*

On June 29, 2006, Plaintiff found glass in his food.  (Dkt. No. 17 at ¶ 43.)  Plaintiff

reported this to the housing unit supervisor, Defendant Moore.  *Id.*  Plaintiff requested medical

care and a new food tray, but Moore refused.  *Id.*

On June 30, 2006, Defendants Moore and Nurse Travers gave Plaintiff a form to fill out

to request medical care.  (Dkt. No. 17 at ¶ 44.)  Travers, without examining Plaintiff, told him

there was nothing wrong with him.  *Id.*

I construe the complaint as asserting Eighth Amendment medical care claims against

Defendants Moore and Travers as a result of these events.

5.     *Allegations against Defendants Bezio, LeClair, Ramsdell, and Sauve re: excessive force*

As mentioned above, on July 9, 2006, Plaintiff filed a grievance complaint against

Defendant N. Bezio.  (Dkt. No. 17 at ¶ 45.)  On July 12, 2006, Plaintiff received a misbehavior

report.  (Dkt. No. 17 at ¶ 47.)

On July 21, 2006, Defendant Bezio commenced a disciplinary hearing.  (Dkt. No. 17 at ¶

49.)  He denied Plaintiff's requests for the video of the July 10 hearing and copies of the July 11

complaint letters and grievance.  *Id.*

On July 24, 2006, Plaintiff filed a complaint against Defendant Bezio with Defendant

LeClaire.  (Dkt. No. 17 at ¶ 50.)  Plaintiff requested that Bezio be removed as his hearing officer.

*Id.*

On July 27, 2006, Defendants Ramsdell and Sheila Sauve and five other officers arrived

at Plaintiff's cell to escort him to a disciplinary hearing.  (Dkt. No. 17 at ¶ 51.)  Ramsdell ordered

Plaintiff to turn his back to the cell door and put his hands behind his back and through the slot in the door. *Id*. Plaintiff complied, and Sauve applied mechanical restraints. *Id*. Plaintiff told Defendants that the restraints were too tight. *Id*. Ramsdell pat frisked Plaintiff "in a very hostile and sexual assault manner that offended Plaintiff['s] manhood and offend[ed] his dignity." *Id*. When Plaintiff arrived at the hearing room, Defendant Bezio told him to stop resisting. *Id*. Ramsdell and Sauve then pushed Plaintiff into the wall and tried to break Plaintiff's right index finger. *Id*. Defendant Bezio and five other officers pushed Plaintiff's face into the wall until it "burst open" and bled. *Id*. Plaintiff's wrists were also bleeding. *Id*. Plaintiff was escorted back to his cell and his legal documents were not returned. *Id*. Plaintiff did not receive medical care despite filing numerous complaints. (Dkt. No. 17 at ¶¶ 51, 58.)

Bezio found Plaintiff guilty of all charges and sentenced him to six months' SHU confinement, three months' loss of good time, and six months' loss of recreation, commissary, packages, and telephone privileges. (Dkt. No. 17 at ¶ 51.)

Plaintiff alleges that Defendant Linda A. Hayes, the stenographer for the hearing, falsely certified that her transcript was accurate. (Dkt. No. 17 at ¶ 77[6].)

I construe the complaint as asserting the following causes of action as a result of these events: (1) Eighth Amendment, substantive due process, and procedural due process claims against Defendant Bezio[7]; (2) Eighth Amendment claims against Defendants Ramsdell[8] and

---

[6]     Plaintiff alleges that Defendant Hayes also "knowingly and willfully ma[d]e a false official report" on another occasion, but it is not clear from the complaint to which disciplinary hearing Plaintiff is referring. (Dkt. No. 17 at ¶ 79.)

[7]     Defendant Bezio has answered the complaint. (Dkt. No. 66.)

[8]     As noted above, Defendant Ramsdell has answered the complaint. (Dkt. No. 66.)

10

Sauve[9]; and (3) First Amendment access to the court, substantive due process, and procedural due process claims against Defendant Hayes.

> 6.     *Allegations against Defendants Ramsdell, Bezio, Allen, Goord and Selsky re: false misbehavior report and transcription*

On July 28, 2006, Defendant Ramsdell and officer Comstock issued misbehavior reports charging Plaintiff with refusing a direct order, violating lock in/lock out procedures, violent conduct, interference with employees, and harassment.  (Dkt. No. 17 at ¶ 52.)  Officer Comstock's report "said he had only written [it] because he was ordered to do so by Defendant Bezio."  *Id*.  The disciplinary hearing on the charges was conducted on several dates in August 2006.  (Dkt. No. 17 at ¶ 53.)  The hearing officer, Defendant D. Quinn,  denied Plaintiff's requests to present evidence.  *Id*.  Plaintiff did not immediately receive a disposition document or any determination of guilt.  *Id*

On October 15, 2006, Plaintiff filed a grievance with Defendant Goord.  (Dkt. No. 17 at ¶ 54.)  In response, Defendant Selsky sent Plaintiff a copy of a disposition from an August 29 hearing.  *Id*.  Plaintiff had been found guilty and sentenced to three months' SHU confinement, three months' loss of good time, and three months' loss of recreation, commissary, packages and telephone privileges.  *Id*.  Plaintiff alleges that Defendant Ashley Allen, the stenographer for the August 29 hearing, falsely certified that her transcript was accurate.  (Dkt. No. 17 at ¶ 78.)

I construe the complaint as asserting the following causes of action as a result of these events: (1) substantive due process, procedural due process, and conspiracy claims against

---

[9]     Defendant Sauve has answered the complaint.  (Dkt. No. 66.)

Defendants Ramsdell and Bezio[10]; (2) a procedural due process claim against Defendant Quinn[11]; and (3) First Amendment access to the courts, substantive due process, and procedural due process claims against Defendant Allen.

> 7.      *Allegations against Defendant Travers re: bloody bowel movements*

On May 8, 2007, Plaintiff filed a sick call request regarding stomach pain, heart pain, and blood in his bowel movements.  (Dkt. No. 17 at ¶ 65.)  On May 9, 2007, a nurse gave Plaintiff three stool sample test cards.  *Id.*  On May 11, 2007, Plaintiff returned the three stool sample cards to Defendant Travers.  (Dkt. No. 17 at ¶ 65.)  On May 12, 13, and 14, 2007, Plaintiff filed sick call requests regarding heart pain and bloody bowel movements.  *Id*.  When Plaintiff asked Travers about the stool sample cards, she said that Plaintiff would soon see a nurse-practitioner because the samples had blood in them.  *Id*.  Travers would not give Plaintiff any pain killers.  *Id*.  Plaintiff filed "numerous" complaints against Nurse Travers and had blood in his bowel movements for nine months but never received care.  (Dkt. No. 17 at ¶ 58, 65.)

I construe the complaint as asserting an Eighth Amendment medical care claim against Defendant Travers as a result of these events.  I note that Defendants have explicitly declined to move to dismiss this cause of action.  (Dkt. No. 67-4 at 21, 22 n. 4.)

---

[10]     As noted above, Defendants Ramsdell and Bezio have answered the complaint. (Dkt. No. 66.)

[11]     Defendant Quinn has answered the complaint.  (Dkt. No. 66.)

8.    *Allegations against Defendants McDonald, Woods and Fisher re: spitting in coffee cup, interfering with medical interview, and profane language*

On May 9, 2007, Plaintiff filed a grievance against Defendant Michele McDonald[12] for spitting in his coffee cup, interfering with a medical interview and using racial and profane language.  (Dkt. No. 17 at ¶ 62.)  I construe the complaint as asserting Eighth Amendment medical care and conditions of confinement claims against Defendant McDonald.

9.    *Allegations against Defendants Woods, Anctil and Tirone re: laughing at Plaintiff's report of pain and the misbehavior report alleging threats by Plaintiff*

On May 17, 2007, Defendant Woods walked by Plaintiff's cell.  (Dkt. No. 17 at ¶ 66.)  Plaintiff complained about his heart and stomach pains and the blood in his bowel movements.  *Id*.  Woods laughed in Plaintiff's face and walked away.  *Id*.  That same day, Plaintiff filed a complaint with Woods, stating that he was receiving cruel and unusual punishment and that "he would not just sit and be physically assaulted ... he will start to fight back to protect hi[m]self and he will not let these defendants kill him and he do not try to take one of them with him and he will feel better to die fighting for his justice."  *Id*.  On May 21, 2007, Defendant Anctil issued a misbehavior report charging Plaintiff with violent conduct and threats[13].  (Dkt. No. 17 at ¶ 68.)  Defendant Tirone presided over the disciplinary hearing on June 7, 2007.  (Dkt. No. 17 at ¶ 69.)

------

[12]    The complaint refers to this defendant as "Macdonal."  (Dkt. No. 17 at ¶ 62.)  I have used the spelling provided in Defendants' motion to dismiss.

[13]    To the extent that this allegation raises any due process claim against Defendant Anctil on the basis that Defendant Anctil issued a false misbehavior report, I dismiss that claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) for two reasons.  First, it is clear from the face of the complaint that Plaintiff did, in fact, make threats.  Thus, the report was not false.  Second, as discussed at length below, even if the report were false, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

13

Plaintiff protested that the hearing was untimely.  He asked to see a copy of any extension.
Tirone denied that request and Plaintiff's requests to present documentary evidence and
witnesses.  *Id.*  Tirone found Plaintiff guilty and sentenced him to nine months' SHU
confinement and nine months' loss of recreation, packages, telephone and commissary privileges.
*Id*.

I construe the complaint as asserting the following causes of action as a result of these
events: (1) Eighth Amendment medical care and substantive due process claims against
Defendant Woods; and (2) a procedural due process claim against Defendant Tirone[14].

10.     *Allegations against Defendants Woods and Anctil regarding threats of physical
        force*

On May 19, 2007, Woods sent Defendant Anctil to escort "Plaintiff to a hearing room and
intimidation of threats of promise to use physical force."  (Dkt. No. 17 at ¶ 67.)  The complaint
does not describe this event in any more detail.  I liberally construe the complaint as asserting the
following causes of action as a result of this event: (1) Eighth Amendment and conspiracy claims
against Defendant Anctil; and (2) substantive due process and conspiracy claims against
Defendant Woods.

**C.     Plaintiff's prayer for relief**

Plaintiff requests (1) a declaration that Defendants violated his rights under the First,
Eighth and Fourteenth Amendments; (2) "compensatory damages from each one of the
defendants in their individual capacity and in their official capacity" of $14 million; (3) "punitive
damages from each defendant in their individual capacity and official capacity in the amount of

---

[14]     Defendant Tirone has answered the complaint.  (Dkt. No. 66.)

$20 million"; (4) a permanent injunction preventing Defendants "from depriving the Plaintiff of his programs he need for parole release, and the right to adequate medical care and the right to receive his adequate rehabilitation adjustment programs and all his good time that was stolen from the Plaintiff ... and to stop deny Plaintiff his outside correspondence with acts of mail theft and stop physical assault ... and put things in his food to harm him and stop using false misbehavior reports to keep Plaintiff's false confinement and stop putting mentally ill inmates in the same cell with Plaintiff or other inmate like Charles Ramball because his child mother is his woman." (Dkt. No. 17 at A-60[15].)

### D.   Summary of Grounds in Support of Defendants' Motion

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No 67.) Defendants argue that (1) the causes of action against Defendants Burge, Devito, Head, Hess, Labetz, Simmons and Sourwine arising out of the events of June 17-August 18, 2005, should be severed and dismissed because they are duplicative of the *Burge* action; (2) the claims against supervisory personnel in their official capacities are barred by the Eleventh Amendment; (3) Defendants Manley, Grant, Capacci and Croce have absolute immunity barring the claims regarding the denials of parole; (4) the complaint insufficiently alleges personal involvement by Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright and N. Smith; (5) the complaint does not state a cause of action against stenographers Linda Hayes, Patricia Salvage and Ashley Allen; and (6) the complaint fails to state a cause of action against Defendants Steinberg, Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore,

---

[15]   Page numbers refer to the handwritten page numbers in the upper right-hand corner of the complaint.

15

Anctil or Travers.  (Dkt. No. 67-4.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

Procedure 8(a)(2);[16] or (2) a challenge to the legal cognizability of the claim.[17]

---

[16]        *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[17]        *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y.

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[18] The main purpose of this rule is to "facilitate a proper decision on the merits."[19] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[20]

---

2004); *Tangore v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[18]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[19]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[20]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

17

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[21]  However, it is well established that even this liberal notice pleading standard "has its limits."[22]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[23]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

---

[21]        *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[22]        2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[23]        *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69[24] (2007).[25]

Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8

"fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the

pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair

notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests.  *Id*. at 1965,

n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the facts

upon which [the claim is based]," it does mean that the pleading must contain at least "some

factual allegation[s]."  *Id*. [citations omitted].  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What

this means, on a practical level, is that there must be "plausible grounds to infer [actionable

conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will

reveal evidence of [actionable conduct]."  *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified

plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all*

claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell*

---

[24]      All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the
U.S. cite because page numbers are not available for the U.S. version.

[25]      The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Bell Atlantic*, 127 S. Ct. at 1969.

*Atlantic*).[26]  The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[27]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim.  *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant

---

[26]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[27]     *See, e.g., Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

20

that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of

the claim and the "grounds" on which the claim rests without ever having to allege any facts

whatsoever.[28]  There must still be enough facts alleged to raise a right to relief above the

speculative level to a plausible level, so that the defendant may know what the claims are and the

grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

---

[28]        For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil
rights complaint because, although the complaint was otherwise factually specific as to how the
prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of
approximately 18 months, the complaint (according to the district court) failed to allege facts
plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at
2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8
and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to
"give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the
plaintiff had alleged that the termination of his hepatitis C medication for 18 months was
"endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id*. at 2200.
While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision
(and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need
mentioning in the short decision: a claim of deliberate indifference to a serious medical need
under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious
medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental
state possessed by prison officials with regard to that sufficiently serious medical need.  The
*Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-
2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that,
during the relevant time period, he suffered from hepatis C is, in and of itself, a factual
allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not
*also* allege that he suffered an independent and "substantial injury" as a result of the termination
of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous
decisions, from district courts within the Second Circuit alone, have found that suffering from
hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.
*See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004);
*Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson
v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002
WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL
760751, at *9 (S.D.N.Y. June 13, 2000).

complaint as true and construe all reasonable inferences in the plaintiff's favor."[29]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[30]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[31]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

---

[29]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[30]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[31]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

they suggest."[32]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[33]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[34]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[35]

---

[32]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[33]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[34]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[35]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile); *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[36] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[37]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[38]  Stated more plainly, when a plaintiff is proceeding *pro se*,

---

Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[36]    *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[37]    *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[38]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply

24

"all normal rules of pleading are not absolutely suspended."[39]

## III.   ANALYSIS

### A.   Allegations in Paragraphs 1-27 of the Amended Complaint

Defendants argue that any claims arising from the allegations in Paragraphs 1-27 of the

complaint should be dismissed because they are duplicative of the allegations in the *Burge* case.

(Dkt. No. 67-4 at 10-11.)  With the exception of Paragraph 27, Defendants are correct.

> As a general rule, "[w]here there are two competing lawsuits, the first
> suit should have priority." *First City Nat'l Bank & Trust Co. v.
> Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (quoting *Motion Picture
> Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16,
> 19 (2d Cir.1986)) (alteration in original). This rule "embodies
> considerations of judicial administration and conservation of
> resources" by avoiding duplicative litigation ...  *Id.* at 80.  We have
> recognized only two exceptions to the first-filed rule: (1) where the
> "balance of convenience" favors the second-filed action, see, e.g.,
> *Motion Picture Lab. Technicians Loc. 780*, 804 F.2d at 19;
> *Remington Prods. Corp. v. Am. Aerovap, Inc.*, 192 F.2d 872, 873 (2d
> Cir.1951), and (2) where "special circumstances" warrant giving
> priority to the second suit, see, e.g., *First City Nat'l Bank*, 878 F.2d
> at 79.

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

Claims are duplicative if they arise from the same nucleus of fact.  *See Alden Corp. v. Eazypower

Corp.*, 294 F. Supp. 2d 233, 235 (D. Conn. 2003).

Here, the claims in Paragraphs 1-26 of the operative complaint (Dkt. No. 17) are

duplicative of Plaintiff's claims in Case No. 9:05-CV-1231 GTS/GJB because they allege

---

with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or
prejudice the adverse party").

[39]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y.
1980).

precisely the same facts.  Neither the balance of convenience nor any special circumstance warrants giving priority to this suit.  Rather, giving priority to this suit would undermine the judicial resources that have already been devoted to the *Burge* action, which has proceeded past the summary judgment stage.  Therefore, I recommend that the Court dismiss the claims set forth in Paragraphs 1-26 of the operative complaint without leave to amend.

Paragraph 27, however, does not arise from the same nucleus of fact as a pending claim in the *Burge* case.  Although Plaintiff alleged in that action that he had filed a grievance against officer Steinberg for mail theft, sexual harassment, and threats (*Burge* Dkt. No. 7 at ¶ 30), Plaintiff did not name Steinberg as a defendant and the Court did not construe the complaint as raising a claim against Steinberg.  (*Burge* Dkt. No. 52 at 8.)  Here, on the other hand, Plaintiff named Steinberg as a defendant (Dkt. No. 17 at A-7) and alleged that Steinberg violated his First Amendment rights.  (Dkt. No. 17 at 56.)  Therefore, I recommend that Defendants' motion to dismiss the allegations in Paragraph 27 be denied.

## B.      Eleventh Amendment

Plaintiff requests damages from Defendants "in their individual capacity and in their official capacity."  (Dkt. No. 17 at A-60.)  Defendants argue that Plaintiff's claims against the supervisory Defendants in their official capacities are barred by the Eleventh Amendment.  (Dkt. No. 67-4 at 11-12.)  Defendants are more than correct: Plaintiff's claims against *all* of the Defendants in their official capacities are barred by the Eleventh Amendment[40].

The Eleventh Amendment has long been construed as barring a citizen from bringing a

---

[40]      The Court has the authority to dismiss the claims against the non-supervisory Defendants in their official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3).

suit against his or her own state in federal court, under the fundamental principle of "sovereign

immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State

immunity extends not only to the states, but to state agencies and to state officers who act on

behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47

(1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

    The Eleventh Amendment bars suits against state officials acting in their official

capacities.[41]  All DOCS employees, not merely supervisors, are state officials for the purposes of

the Eleventh Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver*

---

[41]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The
immunity to which a state's official may be entitled in a § 1983 action depends initially on the
capacity in which he is sued.  To the extent that a state official is sued for damages in his official
capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke
the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439,
1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under
Section 1983] for money damages against state officials in their official capacities."); *Farid v.
Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an
employee who is sued in his official capacity, but does not protect him from personal liability if
he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State
Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against
a state official in his or her official capacity is not a suit against the official but rather is a suit
against the official's office. . . .  As such, it is no different from a suit against the State itself. . . .
We hold that neither a State nor its officials acting in their official capacities are 'persons' under §
1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity
receives notice and an opportunity to respond, an official-capacity suit is, in all respects other
than name, to be treated as a suit against the entity.  It is not a suit against the official personally,
for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL
433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

*v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug.

14, 2000)("All of the defendants in this case are state officials because they are employees of the

New York State Department of Correctional Services.").  Where it has been successfully

demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment,

the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken

from the docket."  *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) (citation

omitted); *see also* Fed. R. Civ. P. 12(h)(3).   Here, the face of the complaint alleges that each

Defendant has an official position with DOCS or the Division of Parole.  (Dkt. No. 17 at ¶ 3.)

Therefore, any claims against the Defendants in their officials capacities are barred by the

Eleventh Amendment.  Accordingly, I recommend that the Court dismiss those claims without

leave to amend.

### C.    Absolute Immunity for Parole Decisions

Plaintiff alleges that he was wrongfully denied parole twice.  At Plaintiff's first parole

hearing on November 8, 2005, the parole record stated that Plaintiff had pleaded guilty to three

crimes.  (Dkt. No. 17 at ¶ 71.)  Plaintiff informed the commissioners - Defendants Vernon J.

Manley, Thomas Grant, and John C. Capacci - that he had not pleaded guilty and that one of the

charges had been dismissed on appeal.  *Id*.  Plaintiff told the commissioners that DOCS officials

had imposed "numerous false disciplinary sanctions" and denied Plaintiff his programming and

that Plaintiff's life was in danger if he remained in prison.   (Dkt. No. 17 at ¶ 72.)  Plaintiff's

parole was denied.  *Id*.

On November 14, 2006, Plaintiff appeared for his second parole hearing.  (Dkt. No. 17 at

¶ 75.)  One of the commissioners was Defendant Croce.  *Id*.  Plaintiff provided documentation to

the commissioners that the underlying charges against him were the result of a false police report

and that DOCS officials had repeatedly brought false disciplinary charges against him and denied

him access to the law library.  *Id*.  Parole was denied.  (Dkt. No. 17 at ¶ 76.)

Plaintiff claims that Defendants Manley, Grant, and Capacci violated his rights by

considering false documents when denying him parole.  (Dkt. No. 17 at ¶¶ 71-74 and pp. 58-59.)

He claims, further,  that Defendant Croce violated his rights by serving as a parole commissioner

at a time when he was "knowingly and willfully" disregarding Plaintiff's complaints about his

treatment.  (Dkt. No. 17 at ¶¶ 75-76 and pp. 58-59.)

Defendants Manley, Grant, Capacci, and Croce argue that they are absolutely immune

from liability for damages regarding their decisions to deny parole.  (Dkt. No. 67-4 at 12-13.)

Defendants are correct.

State actors are entitled to some degree of immunity from liability for damages for their

official acts.  Most actors receive qualified immunity, but a limited number are entitled to

absolute immunity.  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998).  Parole board officials

are "absolutely immune from liability for damages when [deciding] to grant, deny, or revoke

parole because this task is functionally comparable to that of a judge."  *Scotto*, 143 F.3d at 111

(internal citations and punctuation omitted).  A parole hearing officer is entitled to absolute

immunity even if he acted erroneously or maliciously.  *Montero v. Travis*, 171 F.3d 757, 761 (2d

Cir. 1999).  *See also Farid v. Bouey*, 554 F. Supp. 2d 301, 317-18 (N.D.N.Y. 2008).  Moreover,

injunctive relief against parole board officials is not available unless the plaintiff demonstrates

that the officials violated a federal decree or that declaratory relief is not available[42]. *Id.* at 318.

Here, Plaintiff's claims against Defendants Manley, Grant, Capacci, and Croce are premised on their decision to deny him parole. These Defendants are absolutely immune. Moreover, because Plaintiff has not alleged that these Defendants violated a federal decree or that declaratory relief is unavailable, Plaintiff has not stated a claim for injunctive relief against these Defendants. Thus, I recommend that all claims against Defendants Manley, Grant, and Capacci be dismissed and that the claims arising from the denial of parole against Defendant Croce be dismissed without leave to amend.

### D.    Personal Involvement

Defendants argue that the complaint insufficiently alleges that Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith were personally involved in any alleged constitutional violation. (Dkt. No. 67-4 at 13-15.)

The allegations against these defendants focus on their handling of Plaintiff's grievances and complaints. Plaintiff alleges both that these Defendants acted passively by "knowingly and willfully disregarding Plaintiff's complaints" (Dkt. No. 17 at ¶¶ 32, 34, 55, 59, 60-62, 64, 70) and that they actively interfered with his grievances and complaints by falsifying documents and "causing the filing of false misbehavior reports." (Dkt. No. 17 at ¶¶ 44, 57-59.)

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

---

[42]    Plaintiff requests injunctive relief, but it is not clear from the complaint whether or not Plaintiff is requesting injunctive relief against Defendants Manley, Grant, Capacci, and Croce. (Dkt. No. 17 at A-60.) Defendants did not address the issue of immunity from claims for injunctive relief. I raise this issue *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[43]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[44]  If the

defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a

mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.[45]  In other words, supervisory officials may not be held liable merely because

they held a position of authority.[46]  Rather, supervisory personnel may be considered "personally

involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation

after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or

custom under which the violation occurred, (4) had been grossly negligent in managing

subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that the violation was occurring.[47]

> A prisoner's allegation that a supervisory official failed to respond to a grievance is

---

[43]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[44]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[45]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[46]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[47]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

insufficient to establish that the official "failed to remedy that violation after learning of it

through a report or appeal" or "exhibited deliberate indifference ... by failing to act on

information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327,

344-45 (S.D.N.Y. 2000).  *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y.

1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient

to establish liability.").  District Court decisions in this Circuit have established that:

> where a supervisory official like the Commissioner of Corrections or
> a prison Superintendent receives letters or similar complaints from an
> inmate and does not personally respond, the supervisor is not
> personally involved and hence not liable. On the other hand, where a
> supervisor receives an inmate grievance or other complaint and
> responds to it, the supervisor may be liable ... At first glance, these
> holdings might seem counter-intuitive, as giving supervisors an
> incentive to inaction in order to avoid personal liability. However, it
> must be noted that the Commissioner and individual prison
> Superintendents receive innumerable letters and other forms of
> inmate complaints and delegate subordinates to handle them. Thus,
> if mere receipt of a letter or similar complaint were enough, without
> more, to constitute personal involvement, it would result in liability
> merely for being a supervisor, which is contrary to the black-letter
> law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040, at *12-13 (S.D.N.Y. Apr. 23, 2002)

(internal citations omitted) (collecting and analyzing decisions)[48].

Here, as discussed above, Plaintiff alleges both that the supervisory Defendants ignored

his complaints and that they took action by falsifying documents.  I recommend that the claims

that Defendants merely ignored complaints be dismissed without leave to amend.  Regarding

---

[48]     The undersigned will provide a copy of the *Walker v. Pataro* decision to Plaintiff
in light of the Second Circuit's recent decision in *Lebron v. Sanders*, __ F.3d __, 2009 WL
399215 (2d Cir. Feb. 19, 2009).

Plaintiff's claims that the supervisory Defendants falsified documents in response to grievances, I find those allegations conclusory. The complaint does not include any facts supporting those allegations, relying instead on legal conclusions masquerading as factual conclusions. Such conclusory allegations do not state a claim. *Rolon v. Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008). I therefore recommend that these claims be dismissed with leave to amend.

### E.    Stenographers

Plaintiff has named stenographers Patricia Salvage, Linda A. Hayes, and Ashley Allen as defendants. (Dkt. No. 17 at ¶¶ 33, 77-79.) In their motion to dismiss, Defendants assert that Plaintiff "does not allege that defendant stenographers altered or erred in transcribing exactly what took place at the hearings. Rather, it appears that plaintiff is alleging that they violated his rights by memorializing the purported falsity of the underlying allegations and the alleged wrongdoing of the hearing officers." (Dkt. No. 67-4 at 15.) Contrary to Defendants' assertion, the complaint does allege that the stenographers altered the transcripts. For example, Plaintiff alleges that Defendant Salvage "falsified the transcribed (*sic*) of the Tier Three Hearing Transcript ... to contempt [an] Article 78 Procedure." (Dkt. No. 17 at ¶ 33.) He alleges that Defendant Hayes' transcript of the July 27, 2006, disciplinary hearing "is all a falsification ... in a effort to cover-up staff misconduct and this transcribed (*sic*) .... is false information" that will "prevent the Acting Supreme Court Justice of Franklin County Court to performing a lawful duty with this falsification of the records of her transcribed information that is false." (Dkt. No. 17 at ¶ 77.) He alleges that Defendant Allen prepared a "false transcribed document in a effort to cover-up staff misconduct ... to obstruct ... the Supreme Court Justice in their function with Plaintiff Article 78 proceeding ... to prevent the court from performing a lawful duty with the true

33

and accurate transcribed documents of this Tier Three Hearing." (Dkt. No. 17 at ¶ 78.) It appears to the undersigned that Plaintiff is, indeed, alleging that the stenographers falsified transcripts and that they did so to prevent a New York state court from reviewing Plaintiff's disciplinary sentences in Article 78 proceedings.

Construed accordingly, the complaint appears to allege that the stenographers violated Plaintiff's procedural and substantive due process rights and his right of access to the courts. Defendants argue that Plaintiff has failed to state a claim against the stenographers. (Dkt. No. 67-4 at 15-16.) Defendants are correct.

1.    Procedural Due Process

The Supreme Court has held that in the context of a prison disciplinary hearing, procedural due process requires that (1) the inmate receive advance written notice of the disciplinary charges; (2); the inmate be allowed to call witnesses and present documentary evidence; and (3) the fact finder prepare a written statement describing the evidence relied upon and the reasons for the determination. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). A transcript of the disciplinary hearing is not constitutionally required. *Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002). Courts have repeatedly held that the Fourteenth Amendment does not require any administrative review of disciplinary convictions[49]. Moreover,

---

[49]      *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 563-570 (1974) (not listing right to appeal among due process requirements of disciplinary hearing), *accord, Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.2004); *Amato v. Ward*, 41 N.Y.2d 469, 473, 393 N.Y.S.2d 934, 937 (N.Y.1977) ("This type of administrative review [of prison disciplinary hearings pursuant to New York State regulations] is not required by the Federal Constitution.") (*citing Wolff v. McDonnell* ), *accord, Giovanni v. Lynn*, 48 F.3d 908, 911 n. 7 (5th Cir.1995) ("Nor, indeed, is provision for appeal, following an [otherwise] adequate [disciplinary] hearing, required under the more stringent standards of *Wolff v. McDonnell* ....").

courts have repeatedly held that, where such administrative review is conducted, the Fourteenth

Amendment does not require the review of (much less the existence of) a tape recording or

transcript of the disciplinary hearing[50].  Even where a party claims that a transcript was

deliberately tampered with, there is no procedural due process violation if the state provides

adequate post-deprivation remedies.  *Curro v. Watson*, 884 F. Supp. 708, 717-19  (E.D.N.Y.

1995)(prisoner who alleged that court reporters deliberately altered the transcript of his criminal

trial did not state procedural due process claim because New York provides a procedure for

challenging inaccuracies in trial transcripts).  In New York, a prisoner who disputes the accuracy

of the transcript of a disciplinary hearing may raise that issue in an Article 78 proceeding.  N.Y.

C.P.L.R. § 7804(d) (McKinney 1994).

Thus, because Plaintiff was not constitutionally entitled to a transcript and because he

could have challenged any deficiencies in the transcripts in his Article 78 proceeding, he has not

---

[50]        *See, e.g., Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y.2002) ("According
to *Wolff,* the only written or audio record of a disciplinary hearing that must be maintained to
comply with minimal due process standards is a written statement describing the evidence relied
upon and the reason for the determination.... The Court therefore agrees with Defendants that any
alleged defect in the tape would not rise to the level of a constitutional violation."); *Cherry v.
Selsky*, 99-CV-4636, 2000 U.S. Dist. LEXIS 9451, at *15-16 (S.D.N.Y. July 7, 2000) ("This
allegation [that defendant failed to review the audio tape recording of the disciplinary hearing,
prior to affirming the decision of the hearing officer], without more, is insufficient to state a
claim for violation of a liberty interest."); *Afrika v. Selsky*, 750 F. Supp. 595, 600, 602
(S.D.N.Y.1990) (granting defendant's motion for summary judgment because, among other
reasons, plaintiff had no liberty interest in the review of an audio tape of his disciplinary hearing
as part of his administrative appeal, stating that "because both the hearing and review reached the
minimal standards, [defendant] did not violate [plaintiff's] liberty interest in not being confined
without due process"); *Brito v. Coughlin*, No. 88-CV-8064, 1989 WL 241718, at *2 (S.D.N.Y.
July 31, 1989) ("[The due process clause] does not require, however, that a transcript be made or
given to an inmate after a disciplinary hearing.").

stated a claim.  I therefore recommend that the Court dismiss Plaintiff's procedural due process claims against the stenographers without leave to amend.

      2.    <u>Substantive Due Process/Access to Courts</u>

Construed liberally, Plaintiff's complaint raises substantive due process and First Amendment access to the courts claims against the defendant stenographers.  I will analyze these claims together.  The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Zinernon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotations marks and citation omitted).  "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised."  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotations marks and citations omitted).

The first step in a substantive due process analysis is to identify the precise constitutional right at stake.  *Lowrance*, 20 F.3d at 537 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123-25 (1992)).  "Substantive due process embraces an individual's right of access to the courts."  *Curro*, 884 F. Supp. at 719.  Prisoners' right to access to the courts includes proceedings to "attack their sentences, directly or collaterally, and ... to challenge the conditions of their confinement."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  "[A]n Article 78 petition that challenges an inmate's ... SHU confinement is an action for which access to the courts is constitutionally guaranteed .... [because it] relates directly to the conditions of confinement."  *Collins v. Goord*, 438 F. Supp. 2d 399, 417 (S.D.N.Y. 2006).  Plaintiff claims that the defendant stenographers thwarted his efforts to pursue Article 78 proceedings by providing false

36

transcriptions.  (Dkt. No. 17 at ¶¶ 33, 77, 78.)  Thus, the constitutional right at stake is the right of access to the courts.

In order to state a claim for denial of access to the courts, Plaintiff must allege that the stenographers "hindered his efforts to pursue a legal claim."  *Collins*, 438 F. Supp. 2d at 416 (citing *Lewis*, 518 U.S. at 351).  Similarly, in order to state a cause of action for substantive due process, a plaintiff must allege that he suffered "some tangible harm."  *Curro*, 884 F. Supp. at 720.  *See also Collins*, 438 F. Supp. 2d at 415-16 (plaintiff alleging violation of right to access to the courts must allege an "actual injury.").  Plaintiff has not alleged any tangible harm.  Plaintiff does not allege that he was not successful in his Article 78 proceedings.  Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions.  *Compare Collins*, 438 F. Supp. 2d at 417 (prisoner adequately alleged tangible harm where he alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents).  Therefore, Plaintiff has not stated a substantive due process or First Amendment access to the courts claim against Defendants Salvage, Hayes, or Allen and I recommend that these claims be dismissed with leave to amend[51].

### F.   Failure to state a cause of action against Defendants Steinberg, B. Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore, Travers, Anctil, or McDonald

Defendants argue that Plaintiff has failed to state a claim against Defendants Steinberg, B. Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore, Travers, Anctil, or McDonald. (Dkt. No. 67-4 at 16-23.)

---

[51]    Defendants also argue that any claim against the stenographers is barred by the doctrine of qualified immunity.  (Dkt. No. 67-4 at 15-16.)  In light of my finding that Plaintiff has not stated a claim, I have not addressed this argument.

1.     Bellinger and Hess

Defendants argue that Plaintiff has failed to state a claim against Defendants Bellinger

and Hess.  (Dkt. No. 67-4 at 16-17.)  I disagree.

Regarding Defendants Bellinger and Hess, the surviving paragraphs of the complaint

allege that on August 22, 2005, Plaintiff was removed from his cell and escorted to the medical

unit to give a urine sample.  (Dkt. No. 17 at ¶ 28.)  This sample was required because of a report

by Defendant Hess.  *Id.*  Plaintiff had not seen Hess for two or three weeks prior to August 22.

*Id.*  As Plaintiff was being escorted, Defendant Bellinger told the escort officers to be sure that

Plaintiff's urine test was positive.  *Id.*  Plaintiff asserts that Hess' report and Bellinger's comment

were made in retaliation for Plaintiff submitting a grievance and for "beating" a July 20, 2005,

misbehavior report.  *Id.*

Defendants argue that Plaintiff has failed to state a retaliation claim against Defendant

Hess because (1) Plaintiff was not, in fact, deterred from filing grievances, writing letters of

complaint, or filing lawsuits; and (2)  the allegations regarding a possible retaliatory motive are

implausible[52].  (Dkt. No. 67-4 at 16-17.)

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly

suggesting that (1) the speech or conduct at issue was protected; (2) the defendant took adverse

action against the plaintiff; and (3) there was a causal connection between the protected speech

and the adverse action.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v.*

*Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

---

[52]     Defendants also argue, cursorily and without citation to authority, that these
claims should have been raised in an amended complaint in the *Burge* case.

Defendants argue that Plaintiff has not properly alleged that Hess took adverse action because the "complaint makes it clear that [Plaintiff] was not deterred, in any way from filing grievances, writing letters of complaint, o[r] filing new actions in the federal District Courts for relief of his alleged grievances." (Dkt. No. 67-4 at 17.) Defendants essentially argue that this Court should apply a *subjective* test: was Plaintiff actually deterred? However, the Second Circuit defines "'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003) (emphasis in original). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill*, 389 F.3d at 381. The issue of whether the facts "demonstrate that [a defendant's actions] would deter a reasonable inmate from pursuing grievances" should not be determined at the motion to dismiss stage. Rather, a prisoner plaintiff should be allowed "the opportunity to develop [those] facts." *Davis*, 320 F.3d at 354 (citing *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (abrogated on other grounds by *Porter v. Nussle*, 534 U.S. 516 (2002))). Therefore, dismissal is not appropriate on this ground at this stage in the litigation.

Defendants argue that Plaintiff cannot establish a causal connection between Plaintiff's defense of the disciplinary charge and Hess' actions because Plaintiff "admits that he had not seen defendant for two or three weeks" before the urine test. (Dkt. No. 67-4 at 16.) The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal

constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop.*

*Extension*, 252 F.3d 545, 554 (2d Cir. 2001).  The Second Circuit has, however, found that lapses

of time far longer than two or three weeks are sufficient to support a cause of action for

retaliation.  *Espinal v. Goord*, 554 F.3d 216, 228 (2d Cir. 2009)(the "passage of only six months

between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers ... is

sufficient to support an inference of a causal connection"); *Gorman-Bakos*, 252 F.3d at 555

(lapse of five months between protected activity and retaliation may show a causal connection);

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (lapse of eight months

between an EEOC complaint and retaliatory act indicated a causal connection).  As explained

above, Rule 8 requires a plaintiff to provide  "plausible grounds to infer [actionable conduct],"

or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal

evidence of [actionable conduct]."  *Bell Atlantic*, 127 S.Ct. at 1965.  Plaintiff alleges that Hess

wrongfully interfered with his right to wear a colored Tsalot-Kob, that Hess issued a false

misbehavior report after that incident, and that Plaintiff was found not guilty of the disciplinary

charges.  (Dkt. No. 17 at ¶¶ 12-14.)  It is not implausible that, based on these events, Hess would

have the motive to retaliate.  Moreover, the "two or three" weeks that Plaintiff alleges had passed

since he last saw Defendant Hess appear to be the two or three weeks between the time Plaintiff

was found not guilty of the disciplinary charges on July 23, 2005 (Dkt. No. 17 at ¶ 14), and the

encounter on August 22.  These facts plausibly suggest that Defendant Hess took his first

opportunity to retaliate[53].  Accordingly, Plaintiff has stated a claim for retaliation against

Defendant Hess and I recommend that Defendants' motion to dismiss this claim be denied.

Defendants argue that Plaintiff has not stated a retaliation claim against Defendant

Bellinger because "insulting, disrespectful, or sarcastic comments are considered *de minimus*,

and are not actionable."  (Dkt. No. 67-4 at 17.)  Defendants are correct that insulting comments

generally do not rise to an actionable level.  *Davis*, 320 F.3d at 353.  If Defendant Bellinger were

simply a correctional officer who had made the comment to other officers, the undersigned

would be inclined to agree that the claim should be dismissed.  However, the complaint alleges

that Defendant Bellinger was the Deputy Superintendent of Auburn Correctional Facility.  (Dkt.

No. 17 at A-5.)  As such, the complaint construed liberally alleges that the Deputy

Superintendent of the facility ordered subordinate officers to falsify the results of a drug test.

This is more than a mere insulting comment.  Accordingly, I recommend that Defendants'

motion to dismiss the retaliation claim against Defendant Bellinger be denied.

## 2.     Steinberg, B. Smith, and Clafin

Defendants argue that Plaintiff has failed to state a cause of action against Defendants

Steinberg, B. Smith, or Claflin.  (Dkt. No. 67-4 at 17-18.)  I find that Defendants are partially

correct.

Regarding Defendants Steinberg, B. Smith and Claflin, Plaintiff alleges that while he

was giving the urine sample ordered by Hess, Defendants Steinberg, Smith and Claflin searched

his cell.  (Dkt. No. 17 at ¶ 29.)  When Plaintiff returned to his cell, his legal documents and

---

[53]     By finding that such an allegation is "plausible," I express no opinion on whether
this allegation can be established by evidence and/or survive a more stringent inquiry.

belongings were on the floor and his three Tsalot-Kobs were in the toilet.  *Id.*  A cell search

contraband receipt signed by Steinberg, Smith and Claflin stated that tobacco and marijuana had

been found in the cell.  *Id.*  On August 23, 2005, Plaintiff received a misbehavior report charging

him with possession of a controlled substance.  (Dkt. No. 17 at ¶ 30.)  Plaintiff was found guilty

and sentenced to 12 months' SHU confinement, 12 months' loss of good time credits, and 12

months' loss of recreation, commissary, package and telephone privileges.  *Id.*

 Construed liberally, the complaint alleges that these Defendants violated Plaintiff's First,

Fourth and Fourteenth Amendment rights.  Defendants have not moved to dismiss Plaintiff's

allegation that these Defendants violated his First Amendment rights by throwing his religious

headgear in the toilet.  I find that Plaintiff's First Amendment claim is sufficient to withstand a

*sua sponte* review pursuant to 28 U.S.C. § 1915(e)(2)(B).  In *Farid v. Smith*, 850 F.2d 917, 926

(2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must

determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and

whether the belief is sincerely held; (2) whether the challenged practice of prison officials

infringes upon the religious belief; and (3) whether the challenged practice of the prison officials

furthers some legitimate penological interest."  The complaint sufficiently alleges, for the

purposes of *sua sponte* review, that the wearing of the Tsalot-Kob is a part of Plaintiff's sincerely

held Rastafarian beliefs, that throwing Plaintiff's Tsalot-Kobs in the toilet infringed that belief,

and that there was no legitimate penological reason for throwing the Tsalot-Kobs in the toilet.

Therefore, I recommend that Defendants be directed to answer this claim.

 Defendants argue that Plaintiff has failed to state a cause of action against Defendants B.

Smith, Steinberg, and Claflin because (1) prisoners have no Fourth Amendment right of

protection against unreasonable searches; and (2) prisoners have no constitutional right to be free

from being falsely accused.  (Dkt. No. 67-4 at 17-18.)  Defendants are correct, with the exception

of the false accusation claim against Defendant Steinberg.

      The Fourth Amendment provides that "[t]he right of the people to be secure in their

persons . . . against unreasonable searches . . . shall not be violated."  U.S. Const. amend IV.

"What is reasonable, of course, depends on all of the circumstances surrounding the search or

seizure and the nature of the search or seizure itself."  *Skinner v. Ry. Labor Executives' Ass'n*,

489 U.S. 602, 619 (1989) [internal quotation marks and citation omitted].  "Thus, the

permissibility of a particular practice is judged by balancing its intrusion on the individual's

Fourth Amendment interests against its promotion of legitimate governmental interests."

*Skinner*, 489 U.S. at 619 [internal quotation marks and citations omitted].  In so doing, "[c]ourts

must consider the scope of the particular intrusion, the manner in which it is conducted, the

justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S.

520, 559 (1979) [citations omitted], *accord*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992).

The Fourth Amendment's proscription against unreasonable searches does not apply *at all* within

the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526 (1984); *see also Tinsley v.

Greene*, 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31, 1997) (Pooler, J., adopting

Report-Recommendation of Homer, M.J.) ("Searches of prison cells, even arbitrary searches,

implicate no protected constitutional rights.").  Therefore, Plaintiff has not stated a Fourth

Amendment claim against Defendants Steinberg, B. Smith or Claflin and I recommend that this

claim be dismissed without leave to amend.

Plaintiff has not stated a Fourteenth Amendment due process claim against Defendants Smith or Claflin.  "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]); *accord*, *Pittman v. Forte*, 01-CV-0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.).  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing[54]."  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).  The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right."  *Boddie*, 105 F.3d at 862.  The complaint does not allege that Smith or Claflin acted in retaliation.  Read extremely broadly, however, it does suggest that Steinberg had a retaliatory motive becaues it states that four days prior to the search, Plaintiff filed a grievance against Steinberg.  (Dkt. No. 17 at ¶ 27.)  Therefore, I recommend that the due process claims be dismissed as to Defendants Smith and Claflin with leave to amend but that Defendants' motion to dismiss the false accusation claim against Defendant Steinberg be denied.

3.     Corrigeux, Premo, and D. Wood

The complaint alleges that on April 29, 2006, Plaintiff was moved into a cell with an inmate who had a long history of drug use.  (Dkt. No. 17 at ¶ 38.)  On May 7, 2006, Defendant Premo ordered Plaintiff to submit a random urine specimen.  Premo said "Albany" had made the

---

[54]     Plaintiff alleges that he was not allowed to present a defense at the disciplinary hearing.  (Dkt. No. 17 at ¶ 30.)

request.  (Dkt. No. 17 at ¶ 36.)  On May 9, 2006, Plaintiff and his cell mate were both ordered by a non-defendant correctional officer to submit a random urine specimen.  (Dkt. No. 17 at ¶ 37.) Plaintiff alleges that the reason for the second test was to use his cell mate's specimen "to give me a false positive of cocaine and cannabinoid."  (Dkt. No. 17 at ¶ 38.)

On May 12, 2006, Defendant Wood issued misbehavior reports charging Plaintiff and his cell mate with use of controlled substances.  Plaintiff alleges that Defendant Wood listed the date that he took the specimens as May 11 rather than May 9 so that Plaintiff's cell mate would have his misbehavior report dismissed as a reward for helping to set up Plaintiff.  (Dkt. No. 17 at ¶ 39.)  As part of his defense at the ensuing disciplinary hearing, Plaintiff requested a copy of the urinalysis test.  Plaintiff alleges that Defendants Premo and Corrigeux falsified the document to make it appear that Corrigeux, rather than "Albany," had requested the test.  (Dkt. No. 17 at ¶ 40.)  Plaintiff was found guilty and sentenced to six months' SHU confinement, six months' lost good time, and six months' lost package, commissary, recreation, and telephone privileges.  *Id*.

I have construed the complaint as asserting (1) a Fourth Amendment claim, a due process claim, and a conspiracy claim against Defendant Premo; and (2) due process and conspiracy claims against Defendants D. Wood and Corrigeux.

Defendants have not moved to dismiss the Fourth Amendment claim against Defendant Premo.  I find that the claim is sufficient to withstand initial review pursuant to 28 U.S.C. § 1915(e)(2)(B).  Urinalysis testing constitutes a search subject to the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U .S. 602, 614 (1989); *Harris v. Keane,* 962 F. Supp. 397, 407 (S.D.N.Y.1997).  However, if the intrusion into one's privacy is found to be minimal, the expectation of privacy is minimal, and there is a governmental reason advanced

supporting a search, then the search will not violate one's Fourth Amendment rights.  It is equally well-established that a prisoner's right to be free from unreasonable searches is diminished once he or she steps through the prison door.  *Harris,* 962 F. Supp. at 407.  Pursuant to New York Regulations, as long as the testing is not done with an intent to harass, a corrections officer may order an inmate to submit to urine testing "[w]hen correctional staff has reason to believe the inmate has used drugs ..., when correctional staff receives information from a source that the inmate is currently under the influence of or has recently used ... drugs ..., [or] as part of a computer-generated program for random testing of all inmates [or those] inmates who have been found guilty of drug ... related misconduct in the previous two-year period."  N.Y. Comp. Codes R. & Regs. tit. 7, § 1020.4(a) (1), (4), (7), (8); *see also Rodriguez v. Coughlin,* 795 F. Supp. 609 (W.D.N.Y.1992) (holding that two random drug tests within a twelve-month period, both producing negative results, did not constitute a constitutional violation).  Here, the complaint alleges that Defendant Premo told Plaintiff that the May 7, 2006, drug test was a "random request made by Albany," but that at the disciplinary hearing Premo and Corrigeux represented that Corrigeux had requested the test.  (Dkt. No. 17 at ¶¶ 36, 39.)  These facts raise a sufficient inference of an intent to harass to survive initial review.  The undersigned expresses no opinion about whether the evidence will support these facts or whether this allegation can withstand a more stringent inquiry.

Defendants argue that the due process and conspiracy claims against Defendants Corrigeux, Premo, and D. Wood must be dismissed because (1) prisoners have no right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected

liberty interest; and (2) under the intracorporate conspiracy doctrine, DOCS officials are legally

incapable of conspiring together.  (Dkt. No. 67-4 at 19-20.)  Defendants are correct.

As discussed above, "a prison inmate has no general constitutional right to be free from

being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.

1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]); *accord*, *Pittman v. Forte*,

01-CV-0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.).  In addition,

"[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional

violations which occur at a subsequent disciplinary hearing[55]." *Williams v. Smith*, 781 F.2d 319,

324 (2d Cir. 1986).  The only way that false accusations contained in a misbehavior report can

rise to the level of a constitutional violation is when there has been more, such as "retaliation

against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862; *accord*,

*Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007)

(Treece, M.J.) [citations omitted].

None of the facts alleged in the complaint plausibly suggest that Defendants Premo,

Corrigeux, or D. Wood acted in retaliation for Plaintiff's exercise of a constitutional right.

Therefore, I recommend that all claims against these officers regarding the filing of false reports

be dismissed with leave to amend.

The complaint alleges that Defendants are all DOCS employees.  (Dkt. No. 17 at 1-A9.)

The intra-agency conspiracy doctrine precludes conspiracy claims "against officers, agents, or

employees of a single corporate entity." *Farid v. Bouey*, 554 F. Supp. 2d 301, 324 (N.D.N.Y.

---

[55]     The hearing was conducted by Defendant Bezio, but the complaint does not allege
any facts suggesting that Defendant Bezio conducted the hearing improperly.

2008) (granting summary judgment where prisoner claimed conspiracy between Board of Parole and various BOP commissioners to deprive him of his civil rights).   "The intra-corporate conspiracy doctrine provides that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances."  *Id.* (citing *Everson v. New York City Transit Auth.*, 216 F. Supp.2d 71, 75-76 (E.D.N.Y.2002)).  Therefore, I recommend that all conspiracy charges be dismissed without leave to amend.

       4.    <u>Lewis</u>

      On June 17, 2006, Defendant B. Lewis ordered Plaintiff to submit a urine specimen. (Dkt. No. 17 at ¶ 41.)  Plaintiff, citing a three-hour time limit to submit specimens,  said he would submit the specimen when he finished eating.  *Id.*  Defendant Lewis then said to another officer "Fuck him ... we will just put down [that] he [is] refusing to submit his urine specimen." *Id.*  No one returned to take Plaintiff's specimen.  *Id.*  On June 22, 2006, Plaintiff received a misbehavior report charging him with refusing a direct order.  (Dkt. No. 17 at ¶ 42.)  I have construed the complaint as asserting a due process claim and a conspiracy claim against Defendant Lewis.

      Defendants move to dismiss the claims against Lewis on the same grounds as asserted regarding Defendants Corrigeux, Premo and Wood.  (Dkt. No. 67-4 at 18, 20.)  As with those Defendants, the complaint fails to state a due process claim against Defendant Lewis because Plaintiff has not alleged any facts plausibly suggesting that Lewis acted with a retaliatory motive. Therefore, I recommend that this claim be dismissed with leave to amend.  Moreover, the complaint fails to state a claim for conspiracy because Lewis and the other officer are both

48

DOCS employees.  Therefore, I recommend that this claim be dismissed without leave to amend.

      5.    Moore

The complaint alleges that on June 29, 2006, Plaintiff found glass in his food.  (Dkt. No. 17 at ¶ 43.)  Plaintiff reported this to the housing unit supervisor, Defendant Moore.  *Id.*  Plaintiff requested medical care and a new food tray, but Moore refused.  *Id.*  I have construed the complaint as asserting an Eighth Amendment medical care claim against Defendant Moore.

Defendants argue that Plaintiff has not stated an Eighth Amendment claim against Defendant Moore because Plaintiff "did not know whether or not he swallowed glass, and he alleges no subjective facts from which to infer that he was in 'serious medical need' on June 29 or June 30, 2006 ... and thus, that Sergeant Moore ... knew of, and disregarded, an excessive risk to his health or safety."  (Dkt. No. 67-4 at 21.)

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Here, Plaintiff has not sufficiently alleged that Moore was deliberately indifferent to a serious medical need.  Plaintiff has not alleged that he had a serious medical need.  He alleges

that while eating his food he felt a piece of glass in his mouth.  He removed the glass, inspected

his food, and found three more pieces of glass.  (Dkt. No. 17 at ¶ 43.)  He does not allege that he

swallowed glass or that he was cut by the piece of glass that he placed in his mouth.  Rather, he

merely alleges that "he did not know if any of the glass went down his belly."  *Id*.  While his fear

that he *may* have swallowed glass is understandable, that fear, without more, is insufficient to

constitute a serious medical need for Eighth Amendment purposes because fear, in and of itself,

will not produce death, degeneration, or extreme pain.  Given the lack of a serious medical need,

the complaint does not allege facts plausibly suggesting that Moore was deliberately indifferent.

Moreover, there is no allegation that Moore placed the glass in Plaintiff's food.  *Cf. Robles v.*

*Coughlin*, 725 F.2d 12 (2d Cir. 1983) (allegation that defendants contaminated prisoners' food

with glass sufficiently stated an Eighth Amendment claim to withstand initial review).

Therefore, I recommend that the Eighth Amendment medical care claim against Defendant

Moore be dismissed with leave to amend.

      6.    <u>Travers</u>

     Plaintiff complains that Defendant Travers denied him medical care on two occasions: (1)

on June 30, 2006, after he discovered glass in his food (Dkt. No. 17 at ¶ 44); and (2) in May

2007, when Plaintiff reported bloody bowel movements.  (Dkt. No. 17 at ¶ 58, 65.)  Explicitly

declining to move to dismiss the claims arising from the May 2007 incident (Dkt. No. 67-4 at 22,

n. 1), Defendants move to dismiss Plaintiff's Eighth Amendment claim regarding the June 30

glass incident.  (Dkt. No. 67-4 at 21.)

Regarding that incident, the complaint alleges that on June 30, 2006, Nurse Travers gave Plaintiff a form to fill out to request medical care.  (Dkt. No. 17 at ¶ 44.)  Travers, without examining Plaintiff, told him there was nothing wrong with him.  *Id*.

Defendants argue that Plaintiff has failed to state an Eighth Amendment claim against Nurse Travers because (1) Plaintiff has not alleged a serious medical need; (2) prisoners do not have a right to the treatment of their choice, and an inmate's disagreement over proper treatment does not create a constitutional claim; and (3) an allegation of medical negligence does not raise a constitutional claim.  (Dkt. No. 67-4 at 21-22.)

As discussed above with regard to Defendant Moore, Plaintiff has not alleged that he suffered a serious medical need after discovering glass in his food.  Therefore, I recommend that the Eighth Amendment claim against Defendant Travers arising from the events described in ¶ 44 of the complaint be dismissed with leave to amend.

7.    Anctil

The complaint alleges that on May 19, 2007, Woods sent Defendant J. Anctil to escort "Plaintiff to a hearing room and intimidation of threats of promise to use physical force."  (Dkt. No. 17 at ¶ 67.)  Although this allegation is extremely unclear, I have construed the complaint as alleging that Defendant Anctil violated Plaintiff's Eighth Amendment rights and conspired with Defendant Woods.

Defendants move to dismiss Plaintiff's claims against Defendant Anctil.  Defendants argue that verbal harassment, abuse and threats do not amount to violations of constitutional rights.  (Dkt. No. 67-4 at 22.)  Defendants are correct.  "It is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional

violations." *Alnutt v. Cleary*, 913 F. Supp. 160, 165 (W.D.N.Y. 1996) (punctuation omitted). The complaint alleges that Anctil used "intimidation" and "threats" and "promises" of physical force, not that Anctil actually harmed Plaintiff.  Therefore, the complaint fails to state an Eighth Amendment claim against Defendant Anctil and I recommend that the claim be dismissed with leave to amend.

Further, as discussed above, it is legally impossible for DOCS employees to be found liable for conspiring together.  Woods and Anctil are both DOCS employees.  Therefore, the complaint fails to state a conspiracy claim against Defendant Anctil and I recommend that the claim be dismissed without leave to amend.

8.   McDonald

The complaint alleges that on April 30, 2007, Plaintiff filed a complaint with Defendant Woods stating that Defendant McDonald had used racially abusive language to Plaintiff and denied him his food tray.  (Dkt. No. 17 at ¶ 63.)  On May 9, 2007, Plaintiff filed a grievance against Defendant McDonald for spitting in his coffee cup, interfering with a medical interview, and using racial and profane language.  (Dkt. No. 17 at ¶ 62.)  I have construed the complaint as alleging that Defendant McDonald violated Plaintiff's Eighth Amendment medical care and conditions of confinement rights.

In the Second Circuit, a prisoner's allegation that prison officials served unsanitary, spoiled or contaminated food is sufficient to state an Eighth Amendment claim, so long as he or she alleges that he or she suffered a "distinct and palpable injury".  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *Harris v. Ashlaw*, No. 9:07-CV-0358, 2007 WL 4324106, at * 5 (N.D.N.Y. Dec. 5, 2007).  Here, Plaintiff has not alleged that he suffered any injury as a result of

being denied food or drinking the allegedly contaminated coffee.  Therefore, Plaintiff has failed

to state an Eighth Amendment claim against Defendant McDonald arising from this incident and

I recommend that the claim be dismissed with leave to amend[56].

Plaintiff's bare allegation that McDonald interfered with a medical interview is

insufficient to state an Eighth Amendment medical care claim.  As discussed above, a plaintiff

asserting such a claim must allege that he or she suffered from a serious medical condition.

Plaintiff has made no such allegation.  It is not even clear from the complaint with what type of

medical interview McDonald allegedly interfered.  Therefore, I recommend that the Eighth

Amendment medical care claim against Defendant McDonald be dismissed with leave to amend.

Regarding Plaintiff's claim that McDonald used "racial and discrimination and indecent

profane language," as noted above, "[i]t is well established that mere threatening language and

gestures of a custodial officer do not ... amount to constitutional violations."  *Alnutt v. Cleary*,

913 F. Supp. 160, 165 (W.D.N.Y. 1996) (punctuation omitted).  Therefore, I recommend that this

claim be dismissed without leave to amend.

**ACCORDINGLY**, it is

---

[56]    Defendants cite two unpublished Northern District of New York cases for the proposition that "Plaintiff's conclusory allegation ... that [McDonald] spit into his coffee cup is insufficient to state a constitutional ... claim."  (Dkt. No. 67-4 at 23.)  Neither of the cases cited by Defendants found that a prisoner's allegation that a correctional officer spit into his food failed to state an Eighth Amendment claim.  Rather, both of those cases were decided on summary judgment and the Court dismissed the claims because the prisoner failed to *substantiate* them with evidence.  *Chavis v. Kienert*, No. 9:03-CV-0039, 2005 U.S. Dist. LEXIS 41920, at *65-66 (N.D.N.Y. Sept. 30, 2005); *Zimmerman v. Seyfert*, No. 9:03-CV-1389, 2007 U.S. Dist. LEXIS 52388, at *80-81 (N.D.N.Y. July 19, 2007).  Defendants provided copies of the decisions to Plaintiff in accordance with Local Rule 7.1(a)(1).  The undersigned will provide a copy of the *Harris v. Ashlaw* opinion to Plaintiff in light of the Second Circuit's recent decision in *Lebron v. Sanders*, ___ F.3d ___, 2009 WL 399215 (2d Cir. Feb. 19, 2009).

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 67) be **GRANTED IN PART AND DENIED IN PART**;

**RECOMMENDED** that the following claims be dismissed without leave to amend: (1) all claims against Defendants Devito, Head, Labetz, Simons, and Sourwine; (2) the First Amendment religion claims alleged in ¶1-26 of the complaint against Defendant Hess, because they are duplicative of the claims in Case No. 9:05-CV-1231(GTS/GJD); (3) all claims against Defendant Burge; (4) all claims against Defendants in their official capacities; (5) all claims against Defendants Manley, Grant, and Capacci; (6) the claim against Defendant Croce regarding his decision to deny Plaintiff parole; (7) the claims against Defendants Goord, Burge, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they ignored complaints and grievances; (8) the procedural due process claims against Defendants Salvage, Hayes, and Allen; (9) the Fourth Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell; (10) the conspiracy claims against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests; (11) the conspiracy claim against Defendant Lewis arising from the June 17, 2006, request for a urine sample; (12) the conspiracy claim against Defendants R. Woods and Anctil arising from Anctil's May 19, 2007, threats; and (13) the claim that Defendant McDonald used "racial and discrimination and indecent and profane language."

**RECOMMENDED** that the following claims be dismissed with leave to amend: (1) the claims against Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they falsified documents in response to Plaintiff's grievances; (2) the substantive due process and First Amendment access to the courts claims against Defendants

Salvage, Hayes, and Allen; (3) the due process claim against Defendants B. Smith and Claflin arising from the August 23, 2005, misbehavior report; (4) the due process claim against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests; (5) the due process claim against Defendant Lewis arising from the June 22, 2006, misbehavior report; (6) the Eighth Amendment medical care claims against Defendants Moore and Travers arising from Plaintiff's discovery of glass in his food; (7) the Eighth Amendment claims arising from Anctil's May 19, 2007, threats; (8) the Eighth Amendment conditions of confinement claim against Defendant McDonald arising from the denial of food and spitting in Plaintiff's coffee; and (9) the Eighth Amendment medical care claim against Defendant McDonald arising from her interference with Plaintiff's medical interview.

**RECOMMENDED** that Defendants be directed to answer the following claims: (1) the retaliation claim against Defendant Hess arising from the August 22, 2005, drug test; (2) the retaliation claim against Defendant Bellinger arising from the August 22, 2005, drug test; (3) the First Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell; (4) the due process claim against Defendant Steinberg arising from the August 23, 2005, misbehavior report; (5) the Fourth Amendment claim against Defendant Premo arising from the May 7, 2006, drug test; and (6) the Eighth Amendment medical care claim against Defendant Travers arising from Plaintiff's May 2007 report of bloody bowel movements.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal**

**holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance**.[57]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of**

---

[57]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6ᵗʰ Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10ᵗʰ Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5ᵗʰ Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9ᵗʰ Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9ᵗʰ Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 12, 2009
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

57